UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
----------------------------X
                            :
UNITED STATES OF AMERICA,    :
                            :    11-CR-29 (LDW)
        v.                   :
                            :    May 21, 2012
DOMINICK DELIO,              :
                            :    Central Islip, NY
            Defendant.       :
                            :
----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE ARLENE R. LINDSAY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:        LORETTA LYNCH, ESQ.
                          UNITED STATES ATTORNEY
                          BY: SPIROS MUSTAKIS, ESQ.
                          ASSISTANT U.S. ATTORNEY
                          271 Cadman Plaza East
                          Brooklyn, New York  11201


For the Defendant:         RAYMOND G. PERINI, ESQ.




Audio Operator:


Court Transcriber:         ARIA SERVICES, INC.
                          c/o Elizabeth Barron
                          102 Sparrow Ridge Road
                          Carmel, NY 10512
                          (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE CLERK:  Calling 11-CR-29, United States of

2     America v. Dominick Delio.

3          Please state your appearances.

4          MR. MUSTAKIS:  For the government, your Honor,

5     Spiros Mustakis (ph).

6          MR. PERINI:  And for Mr. Delio, it's Perini &

7     Hoerger by Raymond G. Perini.  Good morning, your Honor.

8          THE COURT:  All right, I understand we're here for

9     a plea.  Is that correct?

10         MR. MUSTAKIS:  That is correct, your Honor.

11         THE COURT:  Okay, so let's swear in the defendant.

12         (Defendant is sworn.)

13         THE COURT:  One of the problems is that the

14    referral order hasn't been signed by the defendant.  Wait,

15    maybe he did sign it.  All right.

16         Mr. Delio, is that the correct pronunciation?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  All right, Mr. Delio, first, I want to

19    tell you that this case is assigned to Judge Wexler.  I

20    don't know if you've already appeared before him.

21         THE DEFENDANT:  Yes.

22         THE COURT:  But you have the absolute right to ask

23    Judge Wexler to take your plea.  He's going to sentence you.

24    He's going to be the sentencing judge.

25         Do you understand that?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  So knowing that, do you still -- are

3   you still willing to let me take your plea?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay, so let's go forward with the

6   allocution.  Now, you filled out a form, a plea form which

7   had a lot of questions in it.

8          At the time that you answered those questions, did

9   you answer them truthfully and to the best of your ability?

10         THE DEFENDANT:  Yes, I did.

11         THE COURT:  Okay.  So what I want to do is, on the

12  record, go over those questions with you, so that your plea

13  can be binding, okay?

14         We can start by you telling me, how old are you?

15         THE DEFENDANT:  54, your Honor.

16         THE COURT:  And you are a citizen, I take it?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  Mr. Delio, are you under the care of

19  any kind of a doctor or physician, psychiatrist, anything

20  like that?

21         THE DEFENDANT:  No, your Honor.

22         THE COURT:  Okay.  And what about -- have you ever

23  had a problem with narcotics addiction?

24         THE DEFENDANT:  No, your Honor.

25         THE COURT:  Have you ever been hospitalized for

1  that?

2       THE DEFENDANT:  No, your Honor.

3       THE COURT:  I want to know if your mind is clear

4  today.

5       THE DEFENDANT:  Yes, your Honor.

6       THE COURT:  And in that regard, in the past 24

7  hours, have you had any kind of -- did you take any

8  medication, anything?

9       THE DEFENDANT:  No, your Honor.

10      THE COURT:  You don't take any medication at all?

11 The answer is no?

12      THE DEFENDANT:  No, your Honor.

13      THE COURT:  Have you had anything to drink or

14 anything like that, any alcohol?

15      THE DEFENDANT:  No, I don't drink, your Honor.

16      THE COURT:  Okay.  So right now, your mind is as

17 clear as it could be, correct?

18      THE DEFENDANT:  Yes.

19      THE COURT:  I saw you give me the "thumbs up."

20      THE DEFENDANT:  I'm good.

21      THE COURT:  Okay.  Because one of the things I

22 want to make sure is that you'll understand the consequences

23 here of taking a plea.

24      So let me ask you, Mr. Perini, you've talked to

25 your client about this plea?

1          MR. PERINI:  I have, your Honor.

2          THE COURT:  Are you satisfied he understands the

3     consequences of entering a plea?

4          MR. PERINI:  I am.

5          THE COURT:  Are you satisfied he's capable of

6     understanding the nature of these proceedings?

7          MR. PERINI:  Absolutely.

8          THE COURT:  Mr. Delio, I want to tell you first,

9     you have the right to plead not guilty.

10          Do you understand that?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Let me go over with you what happens

13     when you enter a plea of not guilty, because under the

14     Constitution and the laws of the United States, you would be

15     entitled to a speedy trial, and you would be permitted to

16     have -- permitted to have your lawyer present throughout the

17     entirety of the case, to defend you in that case.

18          Do you understand that?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  If it got to the point where you

21     couldn't afford a lawyer, then one would be appointed for

22     you by the Court.

23          Do you understand that?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  So at a trial, you would be presumed

1 to be innocent and it would be up to the government to

2 establish your guilt by proof beyond a reasonable doubt.

3         Do you understand that?

4         THE DEFENDANT:  Yes, your Honor.

5         THE COURT:  You'd have no obligation to prove you

6 were innocent.  The burden rests entirely on the government

7 to establish your guilt.  And if the government failed to

8 convince a jury that you were guilty beyond a reasonable

9 doubt, then the jury would have a duty to find you not

10 guilty.

11         You understand that's how a trial goes.

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  And also at a trial, the witnesses for

14 the government would have to come to court and they would be

15 required to testify in your presence.  And your lawyer would

16 have a right to examine those witnesses by asking them

17 questions.  You could object to the evidence that the

18 government offered and offer evidence on your behalf.

19 That's at trial, okay?

20         Do you understand that?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  And the other thing that could happen

23 at a trial is, you would have the right to testify if you

24 wanted to do that, but you couldn't be required to testify,

25 because you have the right not to incriminate yourself.  So

1  if you, in a trial, decided you didn't want to testify, what

2  the judge would do is tell the jury they couldn't hold that

3  against you, because you have that right.

4         Do you understand that?

5         THE DEFENDANT:  Yes, your Honor.

6         THE COURT:  But if you go forward with this plea

7  and the Court accepts the plea, all those rights I just

8  discussed with you are gone.  There's not going to be any

9  trial.  What would happen is, based on your plea of guilty,

10 the Court would enter a judgment of guilt, as though a jury

11 had returned it.  But there would be no going back from

12 that.  There's no way, once you enter that plea of guilty,

13 that you could undo it, attack it, change your mind about

14 it.

15        Do you understand that?

16        THE DEFENDANT:  Yes, I do, your Honor.

17        THE COURT:  The only thing that would be left open

18 to you is to challenge the sentence that the Court enters,

19 but even that is limited based on some of the terms of your

20 plea agreement.

21        Do you understand that?

22        THE DEFENDANT:  Yes, I do.

23        THE COURT:  One of the other things I have to warn

24 you about is that if you go forward with this plea, I'm

25 going to have to ask you questions about what you did, in

order to satisfy the Court that you are in fact guilty of

the crimes that you're pleading guilty to, and you would be

required to give up your right not to incriminate yourself

and give me answers to the questions.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  So are you willing to give up these

rights that I've just discussed with you?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  Now, I know that there's a plea

agreement here.  So I don't know if you're prepared for

this, Mr. Matsukis, but you might -- Mustakis, sorry.  You

might want to summarize the plea agreement for the record.

MR. MUSTAKIS:  Thank you, your Honor.  With

respect to the plea agreement, the defendant is agreeing to

plead guilty to Count 1 of the indictment.  With respect to

the offense level, Racketeering Act 5 carries a -- estimated

by the government of 12 points.  Racketeering Act 7 is a

total of 12 points.  Therefore, there is an adjusted offense

level of 19 plus 2 points for the defendant's role as a

manager or supervisor, which has a total of 21 points.

However, because Mr. Delio is demonstrating

acceptance of responsibility, a two-level reduction would be

sought.  Therefore, the adjusted offense level of 19 carries

a range of imprisonment of 30 to 37 months.  With respect to

1   testify pleading before April 28th of this year, an

2   additional one-level reduction may be warranted, which would

3   result in an adjusted offense level of 18.

4           I'm sorry, your Honor.  With respect to the plea

5   agreement, I would seek to have on page 4 -- that amended to

6   today's date, which is May 21.  I apologize for that.

7           THE COURT:  What paragraph is that?

8           MR. MUSTAKIS:  That is in paragraph 2 on page 4.

9           THE COURT:  Okay.

10          MR. MUSTAKIS:  The defendant is accepting the plea

11  -- we had this plea scheduled for last week, your Honor.

12  Unfortunately, there was an emergency.

13          THE COURT:  Right.

14          MR. MUSTAKIS:  Therefore, the defendant would be

15  entitled to the one-point reduction.

16          THE COURT:  So we're amending it to read what

17  date?

18          MR. MUSTAKIS:  Today's date.

19          MR. PERINI:  May 21st, your Honor.

20          THE COURT:  Which is what?

21          MR. PERINI:  May 21st.

22          MR. MUSTAKIS:  May 21st.

23          THE COURT:  That was a sly way of asking you,

24  what's today's date?

25          MR. MUSTAKIS:  I had to look it up, your Honor.

Therefore, the adjusted offense level of 18, the government estimates carries a range of imprisonment of 27 to 33 months. The review of the criminal history shows that he has none and, therefore, is in a criminal history category 1. With respect to paragraph 4, your Honor, the defendant, as the Court has already mentioned, is waiving some of his rights, and the defendant agrees not to file an appeal or otherwise challenge the conviction or sentence, in the event the Court imposes a term of imprisonment of 41 months or below.

Moving forward, your Honor, there is one more issue I know Mr. Perini and I have spoken about. There are 16 defendants in this indictment. All of them are forfeiting the items seized during the search warrants of their homes and illegal gambling operations.

With respect to Mr. Delio, I'd just like to make the record clear what items are attributable to Mr. Delio. They're on page 7, Roman numeral 3: $148,460 that was recovered in a safety deposit box at TD Bank in Hauppauge. And then two of the gambling operations that Mr. Delio managed or supervised, which would be on page 8, Roman numeral 8 and Roman numeral 9, it's assorted televisions, $400 in cash; and finally, the items seized at Mr. Delio's home, which is 7 Ridge Court in Hauppauge, which is an additional $1,916 in cash and some other assorted items.

1          THE COURT:  Okay.

2          Mr. Delio, the plea agreement that you executed is

3   fairly lengthy.  It looks to be about fourteen pages long.

4          Did you read this document?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  And you went over it with your lawyer?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  And he explained some of the

9   provisions to you?

10          THE DEFENDANT:  Yes, he did.

11          THE COURT:  Okay, because I'm going to highlight a

12   couple of things.  I'm not going to go over the entire

13   document but just to highlight a few things for you, to make

14   sure you're clear on them.

15          You see, the plea agreements do a couple of

16   things:  They calculate, as counsel said, what the

17   government believes is the guideline range for you, okay?

18          You discussed the sentencing guidelines with your

19   lawyer?

20          THE DEFENDANT:  Yes, I did.

21          THE COURT:  The guideline range is a recommended

22   range of imprisonment that Judge Wexler will consider at the

23   time of sentencing.  But notice I said "recommended," okay?

24   So Judge Wexler has the option to go up above the guideline

25   range or go down below the guideline range, depending on the

1    facts and circumstances surrounding the case, your

2    background and the information that's made known to Judge

3    Wexler when you go back to Probation and they do a report.

4    Because what will happen after this plea is done -- at some

5    point, you'll go to the Probation Department and they will

6    do a complete review of your case, your personal history,

7    your background, and they will report to Judge Wexler.

8            He'll have that report, your attorney will have

9    the report as well and access to the report.  And in that

10   report, there will be a recommendation from Probation as to

11   what the guideline range should be.  And what's important

12   here is, their recommendation can be different from what the

13   government says, okay?  It could be higher, it could be

14   lower, it could be the same.

15           The thing I need you to be clear on is, what the

16   government calculates here in your plea agreement is their

17   best guess based on what they know about the case.  It's

18   not, you know, pulled out of thin air but it's also a

19   calculation based on the information they have.  If

20   Probation finds out something that changes the formula, you

21   don't get to withdraw your plea.

22           Do you understand that?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  Okay.  So one of the things I like to

25   do is to talk to -- remind you about what's the worst-case

scenario. You see, you've heard from the government and
they've said, listen, Judge, based on our calculations and
what we know of the defendant, we believe that he would be
eligible for a level 21, okay? That's where they started.
And we're of the opinion that a two-level reduction is
warranted because he's accepted responsibility, as you
appear to be doing now, and that would bring it down to a
19. And then furthermore, they've agreed to bring it down
even one level more, in order to expedite this plea. So
they've come down to an offense level of 18, which carries a
range of 27 to 33 months, okay?

But as I told you, that's the government's
calculation. They also conditioned it by saying, listen, we
believe Mr. Delio is a category 1, meaning your criminal
history is such that it won't bump up the numbers, okay,
based on what they know. Now, if the review from Probation
turns up something that bumps up the numbers, that says
you're not entitled to a category 1, well, that could
happen.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. And I told you that Judge
Wexler has a certain amount of discretion here. He could
follow the guideline range. But if he sees facts that
warrant an upward departure -- he can't do it arbitrarily

1    but there would be -- there has to be a good basis for it.

2    But if he sees something that he believes provides a good

3    basis to go over the guideline range or go under it, because

4    it could work in your favor, also, he may do that.

5            So let me just review with you what's the worst-

6    case scenario.  I mean, you know, there's only -- he can't

7    go to infinity, and that's why the government includes in

8    the plea what's the maximum penalty that can be imposed in

9    connection with the count you're pleading guilty to.  So

10   this is what appears on page 1.

11           The maximum term of imprisonment is twenty years,

12   the minimum term is zero.  The maximum supervised release

13   that any judge can sentence you to is three years, which

14   would follow any term of imprisonment.  The maximum fine

15   that can be imposed is $250,000 or twice the gross profits

16   of the enterprise.  Restitution would be in an amount to be

17   determined by the Court.  There would be a $100 mandatory

18   special assessment and the other penalties could amount to

19   criminal forfeiture, which is pretty much described in

20   paragraphs 6 through 14.  So it's important that you know

21   what could go wrong, I guess.  I mean, not that anybody

22   anticipates it, but it could happen.

23           Do you understand that?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  Okay.  Now, if things don't come out

the way the government believes it might or what your attorney might have even said to you, you do not get to withdraw your plea.  That's why I'm here to give you these warnings.

Do you understand that?

THE DEFENDANT:  Yes, I do, your Honor.

THE COURT:  So if -- again, I'm sure you talked to your lawyer about this and you heard from the government. If they're both wrong in their guidelines calculations and Judge Wexler determines based on everything he knows in this case that the guideline range calculations should be higher or lower, you don't get to withdraw your plea and you're subject to the sentence of the defendant.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  One of the things that I saw in this agreement is that -- it's something I wanted to point out to you.  You do give up your right -- remember, I told you before that you don't get to ever go back from pleading guilty once you enter a plea of guilty.  Once we go through this whole process and I explain everything to you, and I'm satisfied you understand it and I take your plea, there's no going back from your plea no matter what.

But I did tell you that you would have a limited right to challenge the sentence of Judge Wexler.  However,

1    the limitation is as follows:  If Judge Wexler sentences you

2    to 41 months, that number or anything less, you give up your

3    right to challenge the sentence of the Court.

4              Are you clear on that?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  So if after this plea, Judge Wexler,

7    for whatever reason he believes is appropriate -- again, it

8    would have to be reasonable -- sentences you to 41 months,

9    which is beyond your expectation, you would have no right to

10   challenge the sentence of the Court or to withdraw your

11   plea.

12             Do you understand that?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  If he sentences you to anything over

15   41 months, you can't withdraw your plea but you would

16   preserve the right to challenge the sentence of the Court.

17             Are you clear?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Okay.  There's another provision in

20   this agreement that I just want to kind of touch upon, and

21   that is -- it appears on the bottom of page 5 and into page

22   6.

23             You see where the government agrees that they're

24   not going to bring any further charges against you based on

25   your activities in connection with the Keyland (ph) Avenue

1  Club?  Do you see that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Okay.  But everything that the

4  government is agrees to is based on the information now

5  known to the office.  Do you see where it says that on the

6  next page?  Based upon the information now known to the

7  office, it will take no position concerning where within the

8  guideline range the sentence should fall and it will not

9  make a motion for an upward departure under the sentencing

10 guidelines.  But they do preserve the right -- are you

11 listening to me?

12         THE DEFENDANT:  Yes.

13         THE COURT:  They do, however, preserve the right

14 that if information relevant to sentencing comes to their

15 attention that you withheld or that they didn't know about

16 at the time and it's significant, because it's not going to

17 be immaterial, it would have to be significant, they reserve

18 the right to not be bound by those paragraphs.  That is,

19 they will take a position at sentencing if they think it's

20 appropriate and they might not give you that upward

21 departure -- and they might make a motion for an upward

22 departure.  I should say both of those.

23         Do you see B and C?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Are you clear with what happens?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Okay.  The rest of that paragraph 5 is

3   also highly important because it's all based on this notion

4   that some of what they've agreed to will no longer be

5   available to you if information relevant to sentencing

6   becomes known to them that they don't already know about,

7   okay?  And let me just keep going with you because I think

8   this whole paragraph is significant.

9          One of the things they tell you is that if it

10  comes to pass that they learn information that's important

11  to sentencing, not only do you lose -- let me rephrase that.

12  The one thing that doesn't happen is, you don't get to

13  withdraw your plea.  Again, the plea always sticks.

14          You got it?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Okay.  The second thing that could

17  happen is if you violate any provision of this agreement,

18  not only are you not released from your plea of guilty, but

19  the government reserves the right to move for -- to be

20  relieved of its obligation to give you that one-level

21  downward adjustment for timely acceptance.  So that when we

22  went from a 19 level to an 18 level, they're saying, we want

23  to be relieved of that responsibility if you violate the

24  provisions of the agreement.  So that would kick you back to

25  the higher range, right?

1          Do you get that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  And they say, you don't get the one

4  level and, in addition, they're released from their

5  obligations under the provisions of paragraphs 5(a), (b) and

6  (c).  So if they determine that you violated any provisions

7  of this agreement, then the commitments they make under

8  5(a), 5(b) and 5(c), they're no longer bound by.

9          You got it?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  So what does 5(a) say except that

12  they're going to dismiss certain counts against you based on

13  this agreement.

14          You see that?

15          THE DEFENDANT:  Yes, I do.

16          THE COURT:  All right.  So that's important to

17  know.  And you don't get to withdraw your plea.

18          You get it?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Obviously, it should tell you that

21  it's important to live up to your parts of -- your

22  obligations under the agreement.  Presumably, they know

23  everything that's pertinent to sentencing that would affect

24  their evaluation of what's appropriate in your case, as to

25  how they should conduct themselves at the time of

sentencing.

        Do you understand that?

        THE DEFENDANT:  Yes, I do, your Honor.

        THE COURT:  Okay.  So there are still some unanswered questions here.  It may all work out in the way that you hope and is sort of kind of outlined in this agreement.  But it's my job, not to scare you out of taking a plea but to at least make sure your eyes are wide open and you understand all the pitfalls that could occur but not necessarily.

        Do you understand that?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Now, these things can get complicated and, you know, I try to make it as simple as possible, but I need to know that you understood what I just explained to you.

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Do you have any questions?  You could ask your lawyer if you want to talk to him about it first, or you want to ask me a question.

        THE DEFENDANT:  No, we've gone over this.

        THE COURT:  Okay, so this is not new to you then.

        THE DEFENDANT:  Right.

        THE COURT:  Okay, good.

        So one of the things that I want to make sure --

1    remember, I told you that the government has to prove its

2    case beyond a reasonable doubt.  So in order to prove the

3    case in this -- as to the charges against you, what they

4    would have to establish is that in or about January -- and

5    between the months of January, 2007 -- I should say the

6    years -- and January, 2010, that within the Eastern District

7    and elsewhere, you and others, being persons employed by and

8    associated with La Cosa Nostra, which is defined as an

9    enterprise engaged in activities which affect interstate and

10   foreign commerce, that you participated, either directly or

11   indirectly, in the conduct of the affairs of that

12   enterprise, meaning La Cosa Nostra, through a pattern of

13   racketeering activity.

14          And then of course there are the racketeering acts

15   that are alleged.  And in your case, it was Act 5.

16          Just Act 5, correct?

17          MR. MUSTAKIS:  Racketeering Act 5 and Racketeering

18   Act 7, your Honor.

19          THE COURT:  Okay, 5 and 7.

20          In your case, what they would have to prove for 5

21   and 7 is that in or about and between January, 2009 and May

22   of 2009, those being approximate dates, that you knowingly

23   and intentionally conducted, financed, managed or supervised

24   all or part of an illegal gambling enterprise, that is the

25   Keyland Avenue gambling enterprise.  And that in doing so,

1  there were five or more persons who were involved in that

2  operation, and that the operation was in play for in excess

3  of thirty days and had a gross revenue of at least $2,000 in

4  any single day.  So that's what they would have to prove

5  beyond a reasonable doubt as to that count, 5.

6          And as to Racketeering Act 7, they would have to

7  show beyond a reasonable doubt that on or about and between

8  September 21 -- on or about that date, September 21, 2009,

9  also within the Eastern District of New York, that you and

10 others knowingly and intentionally used the mail in

11 interstate commerce, with the intention to distribute the

12 proceeds of the unlawful activity, that is the illegal

13 gambling enterprise, and that you did that in violation of

14 the law, and that you thereafter did perform and attempt to

15 perform the promotion, management, establishment or the

16 carrying on of the -- of the illegal enterprise, also in

17 violation of the statute 15 U.S. Code 1952(a)(1)(A) and (2).

18          So overall, it's the racketeering charge that is

19 -- you were involved witness this illegal enterprise, and 6

20 and 7 are actions that you took to further the activities of

21 the enterprise.

22          Do you understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Okay.  So all of that would have to be

25 proven by evidence which would establish your guilt of Count

1 and those racketeering acts beyond a reasonable doubt.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Because they're carried as separate counts.  All right.

Now, have you discussed with Mr. Perini the charge that you're going to plead guilty to?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And you understand what it is you're pleading guilty to?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  All right.  And I've already told you what the maximum sentence is and the fines that could apply in that case, correct?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Finally, let me just make sure -- if this sentence turns out to be more severe than you expected, you realize that you're going to be bound by your guilty plea and you're not going to be permitted to withdraw it.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  All right.  Let me just ask, do you have any questions you would like to me ask about any of this up to this point?

THE DEFENDANT:  No, your Honor.

1          THE COURT:  Okay.  You've gone over all of this

2    with your lawyer.  Yes?

3          THE DEFENDANT:  Yes.

4          THE COURT:  So are you ready to enter a plea at

5    this point?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Mr. Perini, do you know of any legal

8    reason why the defendant should not be permitted to plead

9    guilty?

10          MR. PERINI:  I do not, your Honor.

11          THE COURT:  Mr. Delio, are you satisfied with your

12    lawyer up to this point?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  And do you feel that your lawyer has

15    done a good job?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Okay.  Then with respect to Count 1,

18    which includes Racketeering Acts 5 and 7, as outlined in

19    Counts 5 and 7, how do you plead?

20          THE DEFENDANT:  Guilty, your Honor.

21          THE COURT:  Are you entering this plea of guilty

22    voluntarily and of your own free will?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Has anyone threatened or forced you to

25    plead guilty?

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  So other than the agreement with the

3     government, which we've talked about on the record, has

4     anyone made any promises to you to cause you to plead

5     guilty?

6          THE DEFENDANT:  No, your Honor.

7          THE COURT:  Has anyone promised you what your

8     sentence is going to be?

9          THE DEFENDANT:  No, your Honor.

10         THE COURT:  All right.  So let me just go to Count

11    1, which is the count you pleaded guilty to.

12         Did you, as is charged in Count 1 -- you know, the

13    top of this is cut off, so I don't have the dates in front

14    of me, as to when Count 1 is charged.

15         MR. MUSTAKIS:  Your Honor, would you like a copy

16    of my indictment, which is not cut off?

17         THE COURT:  Yeah, let me see it because this is --

18    the dates are unclear to me.

19         Did you, as charged in Count 1, in or about and

20    between January, 2007 and January, 2010, those being

21    approximate dates, within the Eastern District of New York

22    and elsewhere, did you along with others, as a person who

23    was employed by and associated with La Cosa Nostra, which is

24    described as an enterprise engaged in and the activities of

25    which affected interstate and foreign commerce, knowingly

1 and intentionally conspire to violate Title 18 United States

2 Code Section 1962(c); that is, that you conducted and

3 participated, directly and indirectly, in the conduct of the

4 affairs of that enterprise, La Cosa Nostra, through a

5 pattern of racketeering activity.

6 And the racketeering activity that you

7 participated in is -- in conducting the affairs of the

8 enterprise were as described in 5 and 7, that you, between

9 January, 2009 and May of 2009, also within the Eastern

10 District of New York and also with the assistance of others,

11 knowingly and intentionally conducted, financed, managed,

12 supervised or directed the activities of an illegal gambling

13 business, that is the Keyland Avenue gambling business in

14 Bohemia, and that that operation involved five or more

15 persons, who were involved in the conduct of the Keyland

16 gambling business, and it was a continuous operation that

17 operated for at least thirty days or thirty days or more,

18 and had a gross revenue of at least $2,000 in any single

19 day, that being one of the activities you did in furtherance

20 of the enterprise La Cosa Nostra.

21 And the second one being that on or about

22 September 21, 2009, also within the Eastern District of New

23 York, together with others, you knowingly and intentionally

24 used the mail in interstate commerce, with the intent to

25 distribute the proceeds of the illegal gambling business,

1  and that you thereafter did perform and attempt to perform

2  the management and the promotion and the carrying on and

3  facilitation of that illegal gambling business by use of the

4  mails, okay?

5          That's what you're pleading guilty to.

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  So let me ask you this:  Did you do --

8  did you, as charged in those counts, do the actions that are

9  described in the indictment?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  So what I need to do for me is to tell

12  me in your own words what you did.  I need to hear it from

13  you.

14         THE DEFENDANT:  I managed a club on Keyland and

15  what was the other one -- Knickerbocker.

16         THE COURT:  Where were they located?

17         THE DEFENDANT:  In Bohemia.

18         THE COURT:  Both of them?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Okay.  And how long were you involved

21  in the management?

22         THE DEFENDANT:  Since the opening.

23         THE COURT:  Which was when?

24         THE DEFENDANT:  I don't know the dates.

25         THE COURT:  Give me an approximate date.

1          THE DEFENDANT:  '07.

2          THE COURT:  '07.

3          THE DEFENDANT:  Right.

4          THE COURT:  Until when?

5          THE DEFENDANT:  Maybe six months, five months.

6          THE COURT:  So beginning in '07, for about five or

7    six months?

8          THE DEFENDANT:  Right, right.

9          THE COURT:  You were the manager of both or just

10   the one?

11          THE DEFENDANT:  Both, your Honor.

12          THE COURT:  Okay.  And what did you know about the

13   operation?  What was it?

14          THE DEFENDANT:  It was just a card group, your

15   Honor.  They played cards.

16          THE COURT:  Okay.  Both of them?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  And they operated, each one of them,

19   for over thirty days?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Had more than five employees involved?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Were the revenues in any day $2,000 or

24   more?

25          THE DEFENDANT:  Gross, yes, your Honor.

1    THE COURT:  Okay.  And what did this have to do

2  with advancing the enterprise that is La Cosa Nostra?

3    THE DEFENDANT:  Well, a friend of mine that's been

4  my friend for fifteen years, he was actually part of it and

5  he was a made guy.

6    THE COURT:  Okay.  Did you know that the proceeds

7  of the business were going to assist La Cosa Nostra?

8    THE DEFENDANT:  No, your Honor.

9    THE COURT:  Okay.

10    THE DEFENDANT:  Yeah.  I guess I mailed it to

11  Frankie, so I knew of the mailing to Frankie.

12    THE COURT:  Okay.  Frank being the made guy?

13    THE DEFENDANT:  Correct, your Honor.

14    THE COURT:  Okay.  Was there any question that you

15  knew he was a made guy?

16    THE DEFENDANT:  I'm sorry, your Honor?

17    THE COURT:  You knew he was a made guy.

18    THE DEFENDANT:  Yes, your Honor.

19    THE COURT:  And what did you understand a made guy

20  -- what was he made -- I know what the language is but I

21  think you need to tell me.

22    THE DEFENDANT:  I guess he had affiliates but I

23  knew him and he never did anything with me, so I don't know

24  what he was doing.

25    THE COURT:  Well, what is your definition of a

made guy?  What do you mean by that?

        THE DEFENDANT:  Cosa Nostra.

        THE COURT:  Okay, so you knew he was affiliated with the Cosa Nostra.

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  And you knew he was getting some of the proceeds from the gambling business that the two of you were working together?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  What did you do with the mails?  You mailed the proceeds to --

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Okay.  Directly to him?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  All right.  And you knew that operating this illegal gambling -- this gambling enterprise was unlawful?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  But you went forward anyway?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Mr. Mustakis, is there anything missing from that allocution?

        MR. MUSTAKIS:  No, your Honor.  I'd like to just clarify the record.  Mr. Delio discusses a Frank.  Mr. Frank Politi (ph) is one of the codefendants in the indictment.

1          THE COURT:  Okay.

2          MR. MUSTAKIS:  That the money was mailed to Mr.

3    Politi's home in Orlando, Florida, that the defendant would

4    receive the criminal proceeds for the week at his home and

5    then use the United States Postal Service to mail them to

6    Florida.

7          THE COURT:  So it was more than once?

8          MR. MUSTAKIS:  It was more than once.  It was

9    charged four times in the indictment, your Honor.

10          THE COURT:  Okay.

11          MR. MUSTAKIS:  And with respect to the rooms, the

12    illegal gambling operations were, as stated in the

13    indictment, on or about 2007 to 2009 open.  The defendant

14    was involved with a couple of the codefendants, namely Mr.

15    Frank Politi and Mr. Anthony Saba (ph), that they

16    managed/operated that room.  And as the Court has gone

17    through, satisfied all the elements.  Thank you.

18          THE COURT:  Okay.

19          So there was more than one mailing, Mr. Delio?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  So you'd get the money and then you'd

22    send it to, what was it, Frank?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  In Florida, is that right?

25          THE DEFENDANT:  Correct.

1           THE COURT: All right. Let me just ask the

2  government, how were you going to prove this case without

3  the plea?

4           MR. MUSTAKIS: Yes, your Honor. The government

5  would prove the case beyond a reasonable doubt in various

6  ways: The telephone number -- the telephone instrument

7  number that the defendant had during the time period in 2009

8  was a court-authorized wiretap. The government amassed

9  voluminous telephone conversations of the defendant

10  operating and showing a management control of the illegal

11  gambling operations, as well as wiretaps of the codefendants

12  in this indictment, where they would all discuss the

13  operations of the rooms as well as the mailing of the

14  packages to Mr. Frank Politi in Florida.

15           Search warrants, numerous search warrants were

16  executed on both rooms that Mr. Delio was discussing. The

17  Keyland Avenue club as well as the Knickerbocker club were

18  both -- search warrants were executed by the Suffolk County

19  Police Department. Evidence of illegal gambling was found

20  there, records. A search warrant of Mr. Delio's house was

21  executed, where further evidence of the racketeering

22  conspiracy was found, as well as undercover police officers

23  and informants were in the room to observe the elements as

24  stated by the 1955 prohibition of illegal gambling.

25           That would be physical surveillance, also

1 observing the defendant operating the rooms, and with

2 respect to the packages of the mail being sent to the U.S.

3 Postal Service.  Once the packages were delivered to the

4 post office, with a search warrant, the government was able

5 to open up the packages and review the illegal gambling

6 records as well as the U.S. currency that was sent to Frank

7 Politi in Florida.

8         THE COURT:  The gambling records were sent there

9 as well?

10         MR. MUSTAKIS:  Yes.

11         THE COURT:  Okay.

12         Did you send those records, Mr. Delio?

13         THE DEFENDANT:  No, I didn't mail them but I

14 caused them to be mailed.

15         THE COURT:  Okay, all right.  Then based upon the

16 information that's given to me, I find that you, Mr. Delio,

17 are acting voluntarily, that you understand your rights and

18 the consequences of this plea, and that there is a factual

19 basis for it.  Therefore, I will accept your plea of guilty

20 to Count 1 and I will recommend that Judge Wexler do the

21 same, that is Count 1 based on the racketeering acts

22 described in Counts 5 and 7.  I'll recommend that Judge

23 Wexler do the same.

24         Is there anything else I have to address?

25         MR. MUSTAKIS:  No, your Honor.

1       THE COURT:  Mr. Perini?

2       MR. PERINI:  No, your Honor.

3       THE COURT:  Okay.  Good luck to you, Mr. Delio.

4       THE DEFENDANT:  Thank you, your Honor.

5                   *  *  *  *  *  *  *  *  *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18     I certify that the foregoing is a correct transcript

19 from the electronic sound recording of the proceedings in

20 the above-entitled matter.

21

22

23

24

25 ELIZABETH BARRON                    June 25, 2012